UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

SHARON WOFFORD,

    Plaintiff,

v.

NANCY A. BERRYHILL, Acting
Commissioner of Social Security,[1]

    Defendant.

No. 16 C 4185

Magistrate Judge Mary M. Rowland

# MEMORANDUM OPINION AND ORDER

Plaintiff Sharon Wofford filed this action seeking reversal of the final decision of the Commissioner of Social Security denying her application for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) under Title II and XVI of the Social Security Act (Act). 42 U.S.C. §§ 405(g), 423 et. seq., 1381 et seq. The parties have consented to the jurisdiction of the United States Magistrate Judge, pursuant to 28 U.S.C. § 636(c), and filed cross-motions for summary judgment. For the reasons stated below, the case is remanded for further proceedings consistent with this Opinion.

---

[1] On January 23, 2017, Nancy A. Berryhill became Acting Commissioner of Social Security and is substituted for her predecessor as the proper defendant in this action. Fed. R. Civ. P. 25(d).

# I. THE SEQUENTIAL EVALUATION PROCESS

To recover DIB or SSI, a claimant must establish that he or she is disabled within the meaning of the Act. *York v. Massanari*, 155 F. Supp. 2d 973, 977 (N.D. Ill. 2001).[2] A person is disabled if he or she is unable to perform "any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.1505(a), 416.905(a). In determining whether a claimant suffers from a disability, the Commissioner conducts a standard five-step inquiry:

1. Is the claimant presently unemployed?

2. Does the claimant have a severe medically determinable physical or mental impairment that interferes with basic work-related activities and is expected to last at least 12 months?

3. Does the impairment meet or equal one of a list of specific impairments enumerated in the regulations?

4. Is the claimant unable to perform his or her former occupation?

5. Is the claimant unable to perform any other work?

20 C.F.R. §§ 404.1509, 404.1520, 416.909, 416.920; *see Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000). "An affirmative answer leads either to the next step, or, on Steps 3 and 5, to a finding that the claimant is disabled. A negative answer at any

---

[2] The regulations governing the determination of disability for DIB are found at 20 C.F.R. § 404.1501 et seq. The SSI regulations are set forth at 20 C.F.R. § 416.901 et seq. The standards for determining DIB and SSI are virtually identical. *Craft v. Astrue*, 539 F.3d 668, 674 n.6 (7th Cir. 2008) ("Although the Code of Federal Regulations contains separate sections for DIB and SSI, the processes of evaluation are identical in all respects relevant to this case."). Accordingly, this Court cites to both DIB and SSI cases.

point, other than Step 3, ends the inquiry and leads to a determination that a claimant is not disabled." *Zalewski v. Heckler*, 760 F.2d 160, 162 n.2 (7th Cir. 1985). "The burden of proof is on the claimant through step four; only at step five does the burden shift to the Commissioner." *Clifford*, 227 F.3d at 868.

In addition, in cases such as the one before the Court, where an individual is determined to be disabled and entitled to benefits for a closed period, the Commissioner uses an eight-step sequential process to determine whether the claimant's disability continues. 20 C.F.R. §§ 404.1594(f), 416.994(b)(5); *see Phillips v. Astrue*, 601 F. Supp. 2d 1020, 1028 (N.D. Ill.2009). In applying the eight-step process, the Commissioner must determine:

1. Has the claimant engaged in any substantial gainful activity?
2. If not, does the claimant have an impairment or combination of impairments which meets or equals the severity of a listed impairment?
3. If not, has there been a medical improvement as shown by a decrease in medical severity?
4. Is the medical improvement related to the claimant's ability to do work?
5. If no to steps three and four, do any exceptions to medical improvement apply?
6. If yes to step four, are the claimant's current impairments severe in combination?
7. If the impairments are severe, can the claimant perform his past relevant work?
8. If not, can the claimant perform any other work?

20 C.F.R. §§ 404.1594(f), 416.994(b)(5); *see Phillips,* 601 F. Supp. 2d at 1028; *O'Reilly v. Astrue,* No. 11 C 1409, 2012 WL 1068780, at *7 (N.D. Ill. Mar. 29, 2012).[3]

## II. PROCEDURAL HISTORY

Plaintiff applied for DIB and SSI benefits on August 31, 2012, alleging that she became disabled on November, 1, 2010, due to spinal and lumbar stenosis, degenerative nerve disease, vertigo, and orthostatic hypotension. (R. at 77). The application was denied initially on November 13, 2012, and upon reconsideration on June 18, 2013, after which Plaintiff filed a timely request for a hearing. (*Id.* at 77–85, 97–108, 148–49). On July 29, 2014, Plaintiff, represented by counsel, testified at a hearing before an Administrative Law Judge (ALJ). (*Id.* at 41–76). The ALJ also heard testimony from Thomas Dunleavy, a vocational expert (VE). (*Id.*).

The ALJ issued a partially favorable decision on September 17, 2014, determining that Plaintiff was disabled from December 23, 2010, through March 7, 2013, but not thereafter. (R. at 23–36). Applying the five-step sequential evaluation process, the ALJ found, at step one, that Plaintiff did not engage in substantial gainful activity from December 23, 2010, through September 17, 2014, the date of the ALJ's decision. (*Id.* at 27).[4] At step two, the ALJ found that from December 23, 2010,

---

[3] For a Title XVI claim, the performance of substantial gainful activity is not an issue, and the analysis starts with step two. 20 C.F.R. § 416.994(b)(5); *see Eaton v. Astrue,* No. 11 C 1688, 2012 WL 620115, at *1 (S.D. Ind. Dec. 12, 2012).

[4] Plaintiff requested benefits beginning in November 2010. (R. at 77). However, the ALJ determined that from the alleged start date of November 1, 2010, through December 22, 2010, the medical evidence does not show that Plaintiff's symptoms were disabling. (*Id.* at 33–35.) Plaintiff does not contest the start date of December 23, 2010.

4

through March 7, 2013, the period during which Plaintiff was under a disability, Plaintiff's degenerative disc disease of the lumbar spine status post laminectomy, lumbar pseudomeningocele status post-surgical closure, orthostatis/ orthostatic hypotension, and obesity were severe impairments. (*Id.*). At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any of the listings enumerated in the regulations. (*Id.*).

The ALJ then assessed Plaintiff's Residual Functional Capacity (RFC)[5] and determined that from December 23, 2010, through March 7, 2013, Plaintiff could have performed sedentary work except:

> she could lift up to 10 pounds occasionally and less than 10 pounds frequently; stand or walk for approximately two hours in an eight-hour workday; and sit for approximately six hours in an eight-hour workday, with normal breaks. She could never climb ladders, ropes, scaffolds, ramps or stairs. She could occasionally balance, stoop, crouch, kneel and crawl. Furthermore, she must avoid all exposure to hazards such as machinery with moving mechanical parts, unprotected heights, and operating a motor vehicle.

(R. at 27). Based on Plaintiff's RFC and the VE's testimony, the ALJ determined at step four that from December 23, 2010, through March 7, 2013, Plaintiff was unable to perform any past relevant work. (*Id.* at 31). At step five, based on Plaintiff's RFC, her vocational factors, and the VE's testimony, the ALJ determined that there were no jobs that existed in significant numbers in the national economy that Plaintiff

---

[5] Before proceeding from step three to step four, the ALJ assesses a claimant's residual functional capacity. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). "The RFC is the maximum that a claimant can still do despite his mental and physical limitations." *Craft*, 539 F.3d at 675–76.

5

could have performed. (*Id.* at 32). Accordingly, the ALJ concluded that Plaintiff was disabled, as defined by the Act, from December 23, 2010, through March 7, 2013. (*Id.*).

The ALJ then determined that medical improvement occurred as of March 8, 2013, and applied the eight-step sequential evaluation process applicable to medical improvement cases. At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since December 23, 2010. (R. at 27). At step two, the ALJ determined that beginning on March 8, 2013, Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any of the listings enumerated in the regulations. (*Id.* at 32). At steps three and four, the ALJ found that a medical improvement occurred as of March 8, 2013, which was related to Plaintiff's ability to work. (*Id.* at 33). Because the ALJ found that a medical improvement had occurred, step five is inapplicable here. At step six, the ALJ found that as of March 8, 2013, Plaintiff's degenerative disc disease of the lumbar spine status post laminectomy, lumbar pseudomeningocele status post-surgical closure, orthostatis/ orthostatic hypotension, and obesity were severe impairments. (R. at 32).

The ALJ then assessed Plaintiff's RFC and determined that beginning on March 8, 2013, Plaintiff had the RFC to perform light work except:

> she could lift up to 20 pounds occasionally; lift or carry up to 10 pounds frequently; stand or walk for approximately six hours in an eight-hour workday; and sit for approximately six hours in an eight-hour workday, with normal breaks. She could never climb ladders, ropes or scaffolds, and could occasionally climb ramps and stairs. She could occasionally balance, stoop, crouch, kneel and crawl. Furthermore, she

6

> must avoid concentrated exposure to hazards such as machinery with moving mechanical parts, unprotected heights, and operating a motor vehicle.

(R. at 33). Based on Plaintiff's RFC, the ALJ determined at step seven that Plaintiff is able to perform past relevant work as a teacher's assistant. (*Id.* at 35). Accordingly, the ALJ concluded that beginning on March 8, 2013, Plaintiff was not suffering from a disability as defined by the SSA. (*Id.*).

The Appeals Council denied Plaintiff's request for review on March 15, 2016. (R. at 1–4). Plaintiff now seeks judicial review of the ALJ's decision, which stands as the final decision of the Commissioner. *Villano v. Astrue,* 556 F.3d 558, 561–62 (7th Cir. 2009).

## III. STANDARD OF REVIEW

Judicial review of the Commissioner's final decision is authorized by § 405(g) of the SSA. In reviewing this decision, the Court may not engage in its own analysis of whether the plaintiff is severely impaired as defined by the Social Security Regulations. *Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004). Nor may it "reweigh evidence, resolve conflicts in the record, decide questions of credibility, or, in general, substitute [its] own judgment for that of the Commissioner." *Id.* The Court's task is "limited to determining whether the ALJ's factual findings are supported by substantial evidence." *Id.* (citing § 405(g)). Evidence is considered substantial "if a reasonable person would accept it as adequate to support a conclusion." *Indoranto v. Barnhart*, 374 F.3d 470, 473 (7th Cir. 2004); *see Moore v. Colvin*, 743 F.3d 1118, 1120–21 (7th Cir. 2014) ("We will uphold the ALJ's decision if it is supported by

substantial evidence, that is, such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.") (citation omitted). "Substantial evidence must be more than a scintilla but may be less than a preponderance." *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). "In addition to relying on substantial evidence, the ALJ must also explain his analysis of the evidence with enough detail and clarity to permit meaningful appellate review." *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005).

Although this Court accords great deference to the ALJ's determination, it "must do more than merely rubber stamp the ALJ's decision." *Scott v. Barnhart,* 297 F.3d 589, 593 (7th Cir. 2002) (citation omitted). "This deferential standard of review is weighted in favor of upholding the ALJ's decision, but it does not mean that we scour the record for supportive evidence or rack our brains for reasons to uphold the ALJ's decision. Rather, the ALJ must identify the relevant evidence and build a 'logical bridge' between that evidence and the ultimate determination." *Moon v. Colvin*, 763 F.3d 718, 721 (7th Cir. 2014). Where the Commissioner's decision "lacks evidentiary support or is so poorly articulated as to prevent meaningful review, the case must be remanded." *Steele v. Barnhart,* 290 F.3d 936, 940 (7th Cir. 2002).

## IV. DISCUSSION

In support for her request for reversal, Plaintiff argues that the ALJ (1) improperly concluded that Plaintiff experienced medical improvement related to her ability to work, (2) improperly evaluated Plaintiff's subjective symptom statements, and (3) failed to consider the combined impact of Plaintiff's impairments. (Dkt. 14 at 8–13).

### A. The ALJ's Medical Improvement Analysis

The parties agree that Plaintiff was disabled from December 23, 2010, through March 7, 2013, but there is disagreement as to whether Plaintiff's medical condition improved as of March 8, 2013. Medical improvement is defined as "any decrease in the medical severity of [the claimant's] impairment(s) which was present at the time of the most recent favorable medical decision that [the claimant was] disabled or continued to be disabled." 20 C.F.R. §§ 404.1594(b)(1), 416.994(b)(1)(i). A finding of decreased medical severity must be based on "changes (improvement) in the symptoms, signs and/or laboratory findings associated with [the claimant's] impairment(s)." *Id.; accord Blevins v. Astrue,* 451 F. App'x 583, 585 (7th Cir. 2011). "When, as here, the ALJ finds the claimant disabled for a closed period in the same decision in which she finds medical improvement, the severity of the claimant's current medical condition is compared to the severity of the condition as of the disability onset date." *Lymperopulos v. Astrue,* No. 09 C 1388, 2010 WL 960340, at *7 (N.D. Ill. March 10, 2010).

The burden of proof in establishing a medical improvement lies with the Commissioner. *See Stewart v. Astrue,* 2012 WL 2994080, at *2 (N.D. Ill. July 19, 2012) ("[T]he Commissioner bears the evidentiary burden to demonstrate that a disability has ceased.") (citing 20 C.F.R. § 404.1594(b)(5) & (c)(3)(i)); *see also Hickey v. Colvin,* No. 13 C 7857, 2015 WL 3929642, at *2 (N.D. Ill. June 25, 2015) ("The Commissioner bears the burden in a continuing disability case of showing that the claimant has experienced medical improvement such that he can engage in SGA."). For the ALJ's

finding to be affirmed, there must be substantial evidence showing that Plaintiff experienced a medical improvement such that she would be able to engage in substantial gainful activity. *See* 20 C.F.R. § 404.1594 (b)(1), & (c)(3)(i). After careful review of the record, the Court finds that the ALJ's decision is not supported by substantial evidence.

The ALJ found medical improvement beginning on March 8, 2013 because "there is no evidence of any medical care or treatment or prescription for any medication since March 7, 2013, other than an emergency room record for hematuria (blood in the urine)." (R. at 34). The ALJ concluded that "the significant gap in treatment is inconsistent with the claimant's allegations of disabling symptoms." (*Id.*). It is well settled that an ALJ "must not draw any inferences about a claimant's condition from this failure [to seek treatment] unless the ALJ has explored the claimant's explanations as to the lack of medical care." *Craft v. Astrue*, 539 F.3d 668, 679 (7th Cir. 2008) (internal quotations omitted); s*ee also Thomas v. Colvin*, 826 F.3d 953, 960 (7th Cir. 2016); *see also Beardsley v. Colvin*, 758 F.3d 834, 840 (7th Cir. 2014). The SSA "has expressly endorsed the inability to pay as an explanation excusing a claimant's failure to seek treatment." *Roddy v. Astrue,* 705 F.3d 631, 638 (7th Cir. 2013); Social Security Ruling (SSR)[6] 16-3p at *9 ("An individual may not be able to afford treatment and may not have access to free or low-cost medical services.").

---

[6] SSRs "are interpretive rules intended to offer guidance to agency adjudicators. While they do not have the force of law or properly promulgated notice and comment regulations, the agency makes SSRs binding on all components of the Social Security Administration." Although the Court is "not invariably bound by an agency's policy statements," the Court

10

Here, the ALJ acknowledged that Plaintiff testified "she had not seen Dr. Williams[on] since March 7, 2013, because she could not afford to pay him, and . . . the pharmacy contacts Dr. William[son] directly when prescription[ ] refills are needed." (R. at 34). Despite offering a valid reason for discontinuing treatment with Dr. Williamson, the ALJ nonetheless faults Plaintiff because, "[t]here was no explanation of how [Plaintiff] pays for medications or why she has not sought treatment from public hospitals or clinics at which little or no charge is made for medical care and treatment." (*Id.*). This statement is problematic for two reasons. First, the ALJ is mistaken; Plaintiff did testify that although her medical insurance "ran out" and she could no longer afford to pay to see Dr. Williamson, "Charity Care" pays for her medication. (*Id.* at 61).

Second, as for why Plaintiff did not seek additional treatment from public hospitals or clinics, the ALJ could have asked during the hearing but did not. Indeed, before discounting Plaintiff's symptom statements, the ALJ should have further questioned Plaintiff as to why she did not seek more treatment. *Roddy,* 705 F.3d at 638–39 ("The agency requires ALJs to inquire about a claimant's reasons for not seeking treatment."); SSR 16-3p, at *8 (The ALJ "may need to contact the individual regarding the lack of treatment or, at an administrative proceeding, ask why he or she has not complied with or sought treatment in a manner consistent with his or her complaints."). In summation, the ALJ did not adequately explain why he discounted

---

"generally defer[s] to an agency's interpretations of the legal regime it is charged with administrating." *Liskowitz v. Astrue*, 559 F.3d 736, 744 (7th Cir. 2009).

Plaintiff's explanations for not receiving treatment or adequately explore Plaintiff's reasons for not receiving additional medical treatment as he was required to do before making a negative inference on Plaintiff's symptom statements.

This is particularly important because the ALJ does not cite any symptoms, signs, or laboratory findings that would support a finding of medical improvement. *See* 20 C.F.R. 404.1594(b)(1). "Before limiting benefits to a closed period, an ALJ must conclude either that a claimant experienced 'medical improvement' as evidenced by changes in the symptoms, signs, or test results associated with her impairments, or else that an exception to this rule applies." *Tumminaro v. Astrue,* 671 F.3d 629, 633 (7th Cir. 2011); *see Blevins,* 451 F. App'x at 585 (A finding of medical improvement "must be based on improvement in the symptoms, signs or laboratory findings associated with the [claimant's] impairments.") (citing 20 C.F.R. § 404.1594(a), (b)(1)).

Defendant's arguments that the ALJ's determination of medical improvement is supported by substantial evidence are unavailing. First, Defendant mistakenly asserts that Plaintiff, not the ALJ, "ha[s] the burden of submitting evidence showing that her disability continued." (Dkt. 18 at 4). The Defendant cites 20 C.F.R. §§ 404.1512, 416.912, which addresses a claimant's burden to provide evidence regarding the effects of her medical impairments on her ability to work, but does not address the standards for determining medical improvement. Contrary to the Defendant's assertion, the regulations governing medical improvement indicate that it is the Commissioner that has the burden of proof. *See* 20 C.F.R. §§ 404.1594(b)(5)

("In most instances, we must show that you are able to engage in substantial gainful activity before your benefits are stopped."), 404.1594(c)(3)(i) ("If there has been medical improvement to the degree that the requirement of the listing section is no longer met or equaled, then the medical improvement is related to your ability to work. We must, of course, also establish that you can currently engage in gainful activity before finding that your disability has ended.").

Next, Defendant argues that "the ALJ reasonably concluded that [Plaintiff's] lack of medical insurance, standing alone, did not prove that her disability continued or that she would have continued to seek medical care if she had insurance." (Dkt. 18 at 4). These are impermissible post hoc rationalizations. *Scott v. Astrue*, 647 F.3d 734, 739 (7th Cir. 2011) ("We confine our review to the rationale offered by the ALJ"); *Larson v. Astrue*, 615 F.3d 744, 749 (7th Cir. 2010) ("But these are not reasons that appear in the ALJ's opinion, and thus they cannot be used here"); *Kastner v. Astrue*, 697 F.3d 642, 648 (7th Cir. 2012) ("Under the *Chenery* doctrine, the Commissioner's lawyers cannot defend the agency's decision on grounds that the agency itself did not embrace."). The ALJ failed to explain why he disbelieved Plaintiff's explanation or make further inquiries, which prevents this Court from conducting a meaningful review.

Additionally, Defendant argues that "[t]he ALJ also observed that [Plaintiff] seemed to ambulate without difficulty at the hearing." (Dkt. 18 at 3). The Court notes that "an ALJ must not substitute his own judgment for a physician's opinion without relying on other medical evidence or authority in the record." *Clifford*, 227

13

F.3d at 870. In his decision, the ALJ points to no medical authority that corroborates his determination that Plaintiff's medical impairments improved after March 7, 2013, to such an extent that she would be able to engage in substantial gainful activity. *See* 20 C.F.R. § 404.1594 (b)(1), & (c)(3)(i). Accordingly, this Court concludes that the ALJ's finding of medical improvement based on Plaintiff's lack of treatment is not supported by substantial evidence, and the case must be remanded.

## B. The ALJ's Evaluation of Plaintiff's Subjective Symptom Statements

The Social Security Administration determined recently that it would no longer assess the "credibility" of a claimant's statements, but would instead focus on determining the "intensity and persistence of [the claimant's] symptoms." SSR 16-3p, at *2. "The change in wording is meant to clarify that administrative law judges aren't in the business of impeaching claimants' character; obviously administrative law judges will continue to assess the credibility of pain *assertions* by applicants, especially as such assertions often cannot be either credited or rejected on the basis of medical evidence." *Cole v. Colvin*, 831 F.3d 411, 412 (7th Cir. 2016) (emphasis in original).

The regulations describe a two-step process for evaluating a claimant's own description of his or her impairments. First, the ALJ "must consider whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce the individual's symptoms, such as pain." SSR 16-3p, at *2; *see also* 20 C.F.R. § 416.929. "Second, once an underlying physical or

mental impairment(s) that could reasonably be expected to produce the individual's symptoms is established, we evaluate the intensity and persistence of those symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities . . . ." SSR 16-3p, at *2.

An ALJ's credibility determination may be overturned only if it is "patently wrong." *Craft*, 539 F.3d at 678. In determining credibility, "an ALJ must consider several factors, including the claimant's daily activities, [his] level of pain or symptoms, aggravating factors, medication, treatment, and limitations, and justify the finding with specific reasons." *Villano*, 556 F.3d at 562 (citations omitted); *see* 20 C.F.R. § 404.1529(c); SSR 16-3p. An ALJ may not discredit a claimant's testimony about his symptoms "solely because there is no objective medical evidence supporting it." *Villano*, 556 F.3d at 562 (citing 20 C.F.R. § 404.1529(c)(2)); *see Johnson v. Barnhart*, 449 F.3d 804, 806 (7th Cir. 2006) ("The administrative law judge cannot disbelieve [the claimant's] testimony solely because it seems in excess of the 'objective' medical testimony."). Even if a claimant's symptoms are not supported *directly* by the medical evidence, the ALJ may not ignore *circumstantial* evidence, medical or lay, which does support claimant's credibility. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539–40 (7th Cir. 2003). Indeed, SSR 16-3p, like former SSR 96-7p, requires the ALJ to consider "the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources

and other persons; and any other relevant evidence in the individual's case record." SSR 16-3p, at *4.

The Court will uphold an ALJ's credibility finding if the ALJ gives specific reasons for that finding, supported by substantial evidence. *Moss v. Astrue*, 555 F.3d 556, 561 (7th Cir. 2009). The ALJ's decision "must contain specific reasons for a credibility finding; the ALJ may not simply recite the factors that are described in the regulations." *Steele*, 290 F.3d at 942 (citation omitted). "Without an adequate explanation, neither the applicant nor subsequent reviewers will have a fair sense of how the applicant's testimony is weighed." *Id*. The ALJ's failure to analyze these factors warrants reversal. *See Villano,* 556 F.3d at 562 (because "the ALJ did not analyze the factors required under SSR 96–7p," "the ALJ failed to build a logical bridge between the evidence and his conclusion that [claimant's] testimony was not credible").

Here, neither party disputes the ALJ's initial supportive credibility finding that "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are generally credible from December 23, 2010 through March 7, 2013." (R. at 29). However, at issue is the ALJ's later finding that, pertaining to the period after March 7, 2013, "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely generally credible for the reasons explained in this decision." (*Id.* at 34). The only reason the ALJ gives for his adverse credibility determination is that "[t]he significant gap in

treatment is inconsistent with the claimant's allegations of disabling symptoms." (R. 34).

As an initial matter, Plaintiff contends that the ALJ used what the Seventh Circuit has described as "meaningless boilerplate" language to discredit her statements. (Dkt. 14 at 11). The Seventh Circuit has repeatedly described the same language used in the ALJ's decision as "meaningless boilerplate" because it "yields no clue to what weight the [ALJ] gave the testimony" and fails to link the conclusory statements made with the objective evidence in the record. *Bjornson v. Astrue,* 671 F.3d 640, 645 (7th Cir. 2012). "However, the simple fact that an ALJ used boilerplate language does not automatically undermine or discredit the ALJ's ultimate conclusion if he otherwise points to information that justifies his credibility determination." *Pepper v. Colvin,* 712 F.3d 351, 367–68 (7th Cir. 2013). While the Court is not persuaded that the ALJ's use of this boilerplate language alone is grounds for reversal in this case; the Court finds that the only reason provided by the ALJ for rejecting Plaintiff's credibility is legally insufficient and not supported by substantial evidence.

As discussed in detail above, an ALJ must not draw negative inferences about a claimant's symptoms from a failure to obtain treatment, "without considering possible reasons he or she may not comply with treatment or seek treatment consistent with the degree of his or her complaints." SSR 16-3p, *8; s*ee Thomas*, 826 F.3d at 960; *Beardsley*, 758 F.3d at 840. Here, the ALJ did not explain why he discounted Plaintiff's reasonable explanation of having no insurance and being unable to afford

care. Further, the ALJ did not make additional inquiries when he had questions about why Plaintiff did not seek additional care at a public hospital or clinic before making negative inferences and discounting her symptom statements.

Moreover, without addressing the requisite factors outlined in SSR 16-3p and its predecessor SSR 96-7p, such as daily activities, level of pain or other symptoms, aggravating factors and other limitations, the ALJ "failed to build a logical bridge from the evidence to his conclusion." *See Villano,* 556 F.3d at 562; SSR 16-3p, at *7. As such, the Court finds that the ALJ's evaluation of Plaintiff's subjective symptoms statements was not supported by substantial evidence, requiring remand.

## C. Other Issues

Because the Court is remanding to reevaluate Plaintiff's subjective symptom statements and medical improvement, the Court chooses not to address Plaintiff's remaining argument that the ALJ failed to consider the combined impact of Plaintiff's impairments. On remand, the ALJ shall reassess Plaintiff's subjective symptom statements for the period after March 7, 2013, with due regard for the full range of medical evidence. Further, the ALJ shall reevaluate whether medical improvement has occurred by fully engaging in the eight-step inquiry. Finally, the ALJ shall explain the basis for his findings in accordance with applicable regulations and rulings.[7]

---

[7] Nothing in this ruling is meant to disturb the ALJ's conclusion that Plaintiff was under a disability from December 23, 2010, through March 7, 2013.

## VI. CONCLUSION

For the reasons stated above, Plaintiff's Motion for Summary Judgment [13] is **GRANTED**, and Defendant's Motion for Summary Judgment [17] is **DENIED**. Pursuant to sentence four of 42 U.S.C. § 405, the ALJ's decision is reversed, and the case is remanded to the Commissioner for further proceedings consistent with this opinion.

E N T E R:

Dated: May 8, 2017

*Mary M Rowland*

MARY M. ROWLAND
United States Magistrate Judge